IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**MARIA J. JARAMILLO,**

   **Plaintiff,**

**v.**                **No. CIV-11-0341 JAP/LAM**

**MICHAEL J. ASTRUE, Commissioner**
**of the Social Security Administration,**

   **Defendant.**


# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision (Doc. 20)* and its accompanying *Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision (Doc. 21)* (hereinafter, collectively, "motion"), filed in this case on November 22, 2011. United States District Judge James A. Parker referred the claims raised in the *Motion* to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. *Order of Reference (Doc. 9)*. The Court has reviewed Plaintiff's *Motion (Docs. 20 and 21)*, *Defendant's Response to Plaintiff's Motion to Reverse or Remand (Doc. 22)*, Plaintiff's *Reply Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision (Doc. 23)*, and relevant law. Additionally, the Court

---

[1] Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), file written objections to such proposed findings and recommended disposition. A party must file any objections with the clerk of the United States District Court for the District of New Mexico within the fourteen-day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.

has meticulously reviewed and considered the entire administrative record. [*Doc. 16*].[2]  For the reasons set forth below, the Court recommends that Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision (Doc. 20)* be **GRANTED in part** and **DENIED in part**, and the decision of the Commissioner of Social Security (hereinafter "Commissioner") be **REMANDED**.

## I.  Procedural History

On May 19, 2008, Plaintiff protectively filed an application for Supplemental Security Income. [*Doc. 16-6* at 2-7].[3]  Plaintiff alleges that she became disabled on January 7, 2007, and that she became unable to work due to "[d]epression, anxiety, scol[i]osis."  *Id.* at 16.  Plaintiff's application was denied at the initial and reconsideration levels, on September 2, 2008 and November 14, 2008, respectively. [*Doc. 16-5* at 3-5 and 6-8, respectively].  Administrative Law Judge (hereinafter "ALJ"), George Reyes, conducted a hearing on December 15, 2009. [*Doc. 16-3* at 31-57].  Plaintiff was present and testified at the hearing (*id.* at 34-49), and was represented by counsel at the hearing (*id.* at 33).  Vocational expert (hereinafter "VE"), Diane Weber, was also present and testified at the hearing.  *Id.* at 33 and 50-56.

On March 25, 2010, the ALJ issued a decision denying Plaintiff's application and finding that she is not disabled within the meaning of the Social Security Act. [*Doc. 16-3* at 17-27].  On May 14, 2012, Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 10-11)

---

[2]Citations to the Record (*Doc. 16*) are to the Court's CM-ECF page numbers in this document.

[3]The Court notes that the application states that Plaintiff applied for Supplemental Security Income on June 11, 2008, which is the date of her application (*Doc. 16-6* at 2), but the Disability report, the parties, and the Administrative Law Judge all agree that Plaintiff's protective filing date was May 19, 2008 (*see Doc. 16-7* at 12, *Doc. 21* at 2, *Doc. 22* at 1, and *Doc. 16-3* at 17).  The Social Security Administration explains that: "Protective filing is a Social Security term for the first time you contact the Social Security Administration to file a claim for disability or retirement. Protective filing dates may allow an individual to have an earlier application date than the actual signed application date."  *See* Social Security Disability Resource Center  http://www.ssdrc.com/disabilityquestionsmain20.html,last accessed July 31, 2012.

and, on February 25, 2011, the Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner (*id.* at 2-4).  On April 26, 2011, Plaintiff filed her complaint in this case.  [*Doc. 3*].

## II.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try

the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of Supplemental Security Income (SSI), a person establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520; *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). At the first four steps of the SEP, the claimant has the burden to show that: (1) she is not engaged in "substantial gainful activity;" and (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings" of presumptively disabling impairments; or (4) she is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Krauser v. Astrue,* 638 F.3d 1324, 1326 (10th Cir. 2011)*; Wilson v. Astrue,* 602 F.3d 1136, 1139 (10th Cir. 2010); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show

that the claimant is able to perform other work in the national economy, considering her residual functional capacity (RFC), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## IV.  Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on October 4, 1967. [*Doc. 16-6* at 2]. Plaintiff testified that she completed the tenth grade. [*Doc. 16-3* at 43]. Plaintiff has worked as a "cashier/food prep" and at odd jobs. [*Doc. 16-7* at 17]. Plaintiff alleges that she became disabled on January 7, 2007, and she is unable to work due to depression, anxiety and scoliosis. *Id.* at 16.

Plaintiff's medical records document treatment from David Baldwin, M.D. (*Doc. 17-5* at 1-33, 41-43 and 46); Lovelace Medical Center Downtown (*Doc. 17-5* at 34); Molina Healthcare of New Mexico (*id.* at 35-40); and an unidentifiable source (*Doc. 17-6* at 2-4). Plaintiff's medical records include: two Disability Determination Examinations, one by Louis Wynne, Ph.D., dated August 8, 2008 (*Doc. 17-4* at 2-5) and one by Harry Burger, D.O., dated August 9, 2008 (*id.* at 6-10); a Mental Residual Functional Capacity Assessment and a Psychiatric Review Technique by W. Miller Logan, M.D., both dated August 22, 2008 (*id.* at 11-13 and 14-26); a Physical Residual Functional Capacity Assessment by Edward S. Bocian, M.D., dated September 1, 2008 (*id.* 27-34); and two Case Analyses, one by Janice Kando, M.D., dated November 8, 2008 (*id.* at 36), and one by Elizabeth Chiang, M.D., dated November 10, 2008 (*id.* at 37). Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 19, 2008, the date of her protective filing. [*Doc. 16-3* at 19]. At step two, the ALJ found Plaintiff "has the following severe impairments: scoliosis; depression; borderline intellectual functioning; and anxiety." *Id.* At the third step, the ALJ found

that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, App. 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). *Id.*

Before step four, the ALJ determined that Plaintiff "has the [RFC] to perform medium work with the following additional limitations: she cannot use ropes, ladders or scaffolds; she is limited to simple routine repetitive tasks, that involve only simple work related decisions; she can attend and concentrate for 2 hours at a time then she needs to take a break, she can attend and concentrate for 2 more hours at a time then she needs to take a break, so on and so forth, until she has completed an 8 hour day." *Id.* at 20. The ALJ further determined that Plaintiff "can respond to changes in a routine work setting." *Id.* The ALJ found, in the alternative, that Plaintiff can perform light or sedentary work "with the aforementioned additional limitations." *Id.* In support of his RFC finding, the ALJ states that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." *Id.* at 21. Examples of these inconsistencies noted by the ALJ include: Plaintiff testified that she suffered from migraines for the past 4 to 5 years, but when asked at the hearing why she did not list migraines in her Disability Report form, she claimed she had not had migraines for the past 3 years, and Dr. Burger reported Plaintiff had no headache complaints (*id.* at 23); Plaintiff testified that she had panic attacks 4 to 5 times per month that lasted 1 to 2 days, but when questioned by her attorney, she testified her panic attacks affected her only one time per month; additionally, panic attacks were not listed in her Disability Report (*id.*); there is a record that Plaintiff was told by her treating doctor to go to Walgreens, not the Pill Box, to refill her medications, and Plaintiff indicated she understood, but then she immediately went to the Pill Box anyway, and her physician wrote that "[Plaintiff] probably lied to me, we'll see" (*id.* at 24); Plaintiff made inconsistent statements regarding how far

she could walk and how much she could lift; and there was a "great difference" between Plaintiff's stated functional abilities in mid-August 2008 and her claimed functional abilities in December 2009, with little or no evidence explaining such a decrease in abilities (*id.*). At step four, the ALJ found that Plaintiff has no past relevant work so he proceeded to the fifth step. *Id.* at 25.

At the fifth and final step, the ALJ stated that he asked the VE "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC] for light or sedentary level work with the above additional limitations;" that the VE testified that there was light or sedentary-level work available to Plaintiff; and that the testimony of the VE "discusses the jobs that [Plaintiff] would have been capable of performing in light of the medium, light and sedentary RFCs presented to the [VE]." *Id.* at 26. The ALJ stated that "the [VE's] testimony is consistent with the information contained in the Dictionary of Occupational Titles." *Id.* The ALJ concluded that, "based on the testimony of the [VE]," there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id.* at 25-26. The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.* at 26.

## V.  Analysis

Plaintiff contends that the ALJ's decision should be remanded for four[4] reasons: First, because the ALJ's RFC assessment failed to account for Plaintiff's mental functioning limitations; second, because the ALJ failed to evaluate at step three whether Plaintiff met or equaled a listing-level mental impairment due to borderline intellectual functioning; third, because the ALJ's

---

[4] While Plaintiff states that she has three claims, the Court finds that Plaintiff's claims regarding the ALJ's step-four RFC determination and regarding the ALJ's step three findings can be addressed more clearly as two separate claims.

hypothetical questioning to the VE did not include all of Plaintiff's functional limitations; and fourth, because the VE's testimony conflicts with the Dictionary of Occupational Titles (hereinafter "DOT"). [*Doc. 21* at 1-2 and 3-13]. As relief, Plaintiff asks the Court to remand this case for another hearing. *Id.* at 13. Defendant disputes Plaintiff's contentions and argues that the ALJ's decision should be affirmed because it is based on substantial evidence. [*Doc. 22* at 3-8].

### *A. The ALJ's RFC Findings Regarding Plaintiff's Mental Functioning*

A claimant's RFC is based on how the claimant's physical and mental limitations affect the claimant's ability to work, and is "the most [a claimant] can still do despite [those] limitations." 20 C.F.R. § 404.1545(a)(1). *See also* SSR 96-8p, 1996 WL 374184 at *2 ("RFC is what an individual can still do despite his or her limitations."). The ALJ must base the RFC assessment on all of the relevant evidence in the record, such as medical history, laboratory findings, effects of treatment and symptoms, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any. *Id.* at *5. The ALJ's "determination of [a claimant's] mental RFC involves the consideration of evidence, such as . . . [r]eports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior." SSR 85-16, 1985 WL 56855 at *2.

### *1. Plaintiff's Son's Statement*

Plaintiff's first contention regarding her RFC assessment is that the ALJ erred because he ignored Plaintiff's son's statement that Plaintiff had to be reminded to take her medications and was forgetful. [*Doc. 21* at 5] and [*Doc. 23* at 6-7]; *see also* [*Doc. 16-7* at 25 and 29]. The Court finds that the ALJ did not err in failing to specifically note Plaintiff's son's statement because the ALJ stated that he had considered all of the evidence in the record (*see Doc. 16-3* at 19, 20 and 21) and

his RFC findings reflect Plaintiff's son's testimony. *See Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). The ALJ's finding that Plaintiff's RFC "is limited to simple routine repetitive tasks, that involve only simple work related decisions," and that Plaintiff can only "attend and concentrate for 2 hours at a time then she needs to take a break" (*Doc. 16-3* at 20), reflect an assessment of Plaintiff's limited mental functioning, which indicates that the ALJ considered Plaintiff' son's statement regarding Plaintiff's memory.

Plaintiff relies on *Blea v. Barnhart*, 466 F.3d 903 (10th Cir. 2006), for her claim regarding her son's statement. In *Blea*, the ALJ's decision was remanded in part because the ALJ failed to discuss any of the testimony by the claimant's wife. 466 F.3d at 915. However, that case is distinguishable. In *Blea*, the ALJ made an RFC determination for sedentary work without any limitations, and failed to mention the claimant's wife's uncontroverted testimony that the claimant expressed suicidal thoughts, had rarely left the house and had not shopped, cooked or cleaned since his injury. *Blea*, 466 F.3d at 907 and 914. Because the ALJ's RFC determination did not reflect the substance of the claimant's wife's testimony and, importantly, was in conflict with that testimony, the Tenth Circuit found error in the ALJ's failure to discuss why he rejected her testimony. *Id.* at 915. In contrast, here the ALJ's RFC determination limits Plaintiff to simple routine repetitive tasks involving only simple work-related decisions, and only requires Plaintiff to concentrate for two hours at a time, which encompasses Plaintiff's son's testimony regarding Plaintiff's diminished memory, and is not contrary to Plaintiff's son's statements. Thus, there is no indication that the ALJ rejected Plaintiff's son's testimony, and Plaintiff does not cite to any authority, nor does the Court find any, that requires the ALJ to specifically mention lay testimony that is not contrary to the ALJ's

findings in the ALJ's RFC determination.  The Court, therefore, finds that the ALJ did not err in failing to mention Plaintiff's son's testimony.

### *2. Opinions of Drs. Wynne and Logan*

Next, Plaintiff contends that the ALJ failed to properly consider the opinions of state agency psychological and medical consultants, Drs. Wynne and Logan, respectively, regarding Plaintiff's mental limitations in the ALJ's RFC assessment.  [*Doc. 21* at 5-9] and [*Doc. 23* at 3 and 6].  Plaintiff contends that the ALJ erred in failing to include Dr. Wynne's functional limitations in the ALJ's RFC, specifically that: Plaintiff has difficulty reading and remembering basic written instructions; Plaintiff's concentration and ability to persist at simple work tasks is at least moderately impaired; Plaintiff would have difficulty interacting with coworkers and supervisors; Plaintiff would have difficulty adapting to changes in the workplace; and Plaintiff could not manage her own benefit payments.  *Id.* at 6-9 and [*Doc. 23* at 1-2] (citing *Doc. 17-4* at 4).  Plaintiff also contends that the ALJ should have considered Dr. Logan's assessment that Plaintiff "would be 'markedly limited' in the ability to understand and remember detailed instructions and to carry out same," and that Plaintiff "would have 'moderate limitations' in maintaining attention and concentration for extended periods; complete a normal workday without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; or that she would be able to appropriately interact with the general public."  [*Doc. 21* at 5] and [*Doc. 23* at 2] (citing *Doc. 17-4* at 11-12).  In addition, Plaintiff contends that the ALJ erred in disputing

Dr. Wynne's assessment of Plaintiff's Global Assessment of Functioning (hereinafter "GAF"),[5] and was obligated to re-contact Dr. Wynne. [*Doc. 21* at 5].

The findings of state agency medical or psychological consultants are not binding on an ALJ; however, they are medical opinion evidence which an ALJ must consider, except as to the ultimate determination of whether a claimant is disabled. *See* 20 C.F.R. § 404.1527(f)(2)(i). Here, the ALJ stated that he gave "some weight" to Dr. Wynne's opinions regarding Plaintiff's borderline intellectual functioning, but rejected Dr. Wynne's opinion that Plaintiff has a GAF of 45 (*Doc. 16-3* at 24), and the ALJ discussed Dr. Logan's opinions and stated that he concurred with them and adopted them (*Doc. 16-3* at 23) (referring to Dr. Logan's assessments dated August 22, 2008 at *Doc. 17-4* at 11-13 and 14-26)).

The Court finds that the ALJ sufficiently incorporated Dr. Wynne's and Dr. Logan's findings that Plaintiff's concentration and ability to persist at simple work tasks is at least moderately impaired by limiting Plaintiff to "simple routine repetitive tasks, that involve only simple work related decisions," and limiting Plaintiff to an RFC that requires her to attend and concentrate for only two hours at a time, and then giving her a break throughout an eight-hour day. [*Doc. 16-3* at 20]. However, the ALJ failed to incorporate Dr. Wynne's findings that Plaintiff "has difficulty read[ing] and remembering basic written instructions . . .[;] difficulty interacting with coworkers and supervisors . . .[; and] difficulty adapting to changes in the workplace," in the ALJ's RFC. *See* [*Doc. 17-4* at 4]. Similarly, the ALJ failed to include in his RFC the findings of Dr. Logan that Plaintiff would be "markedly limited" in her ability to understand, remember, and carry out detailed

---

[5]The GAF score is a measurement of the clinician's judgment of an individual's psychological, social and occupational functioning, without regard to the individual's impairment in functioning due to physical limitations. DSM-IV-TR at 32. A GAF score within the range of 41 to 50 indicates "serious symptoms," such as "suicidal ideation, severe obsessional rituals, [or] frequent shoplifting," or "any serious impairment in social, occupational, or school functioning." *Id.* at 34.

11

instructions, and would have moderate limitations in completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, and appropriately interacting with the general public.  *See* [*Doc. 17-4* at 11-12 and 14-26] (Dr. Logan's Mental RFC Assessment and Psychiatric Review Technique, respectively).  The ALJ fails to explain why he rejected these findings by Dr. Wynne and Dr. Logan, and he does not provide support from the record for finding that those limitations should be disregarded, which is legal error.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.") (citation omitted); *see also* SSR 96-8p, 1996 WL 374184 at *7 ("The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").  The Court, therefore, will remand with instruction to the ALJ to either explicitly incorporate the findings of Drs. Wynne and Logan into his RFC assessment, or explain why they are rejected.

The Court finds that the ALJ did not err in rejecting Dr. Wynne's opinion that Plaintiff has a GAF score of 45.[6]  [*Doc. 16-3* at 24] (citing *Doc. 17-4* at 2-5).  Plaintiff relies on *Robinson v. Barnhart*, 366 F.3d 1078 (10th Cir. 2004) for this contention; however that case is inapposite.  First, *Robinson* held that "[i]f evidence from the claimant's <u>treating doctor</u> is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician, to determine if additional needed information is readily available." 366 F.3d at 1084 (emphasis added).  Plaintiff does not contend that evidence from her treating doctor is inadequate

---

[6]The Court notes that Dr. Logan states in his Psychiatric Review Technique under the section "Consultant's Notes" that "[a] GAF of 45 was assigned." [*Doc. 17-4* at 26].

to determine whether she is disabled because Dr. Wynne is not Plaintiff's treating physician -- he is a state agency doctor who performed a Disability Determination Examination, so the holding in *Robinson* does not apply.  Nevertheless, no error was committed by the ALJ in rejecting this score because a GAF score alone does not determine disability; "rather it is a piece of evidence to be considered with the rest of the record."  *Butler v. Astrue*, No. 10-5059, 412 Fed. Appx. 144, 147, 2011 WL 458086 (10th Cir. Feb. 10, 2011) (unpublished) (citation omitted) (GAF scores may be helpful at arriving at an RFC but are "not essential to an RFC's accuracy").  The Court, therefore, finds that the ALJ did not err in rejecting Dr. Wynne's GAF assessment of Plaintiff.

### *B. The ALJ's Step Three Listing*

Next, Plaintiff contends that the ALJ erred in failing to evaluate whether Plaintiff met or equaled a listing-level mental impairment under Listing 12.05 due to borderline intellectual functioning. [*Doc. 21* at 7 and 9] and [*Doc. 23* at 4-5].  Plaintiff also contends that the ALJ should have ordered a consultative psychological evaluation to determine the extent of Plaintiff's mental limitations.  [*Doc. 21* at 7] and [*Doc. 23* at 4-5].

"In order to satisfy listing 12.05, a claimant must [] meet the requirements of that listing's capsule definition . . . [as well as] one of the four severity prongs for mental retardation as listed in the regulations."  *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (internal quotation marks, and citation omitted).  The capsule definition for Listing 12.05 states: "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.

Here, the ALJ considered whether Plaintiff met several listings, including three for mental impairments (12.02, 12.04, and 12.06), but did not evaluate whether she met Listing 12.05.  *See*

[*Doc. 16-3* at 19]. However, the ALJ was not required to consider Listing 12.05 because Plaintiff never identified mental retardation as an issue needing further development, and the evidence in the record does not indicate that Plaintiff would satisfy the criteria for Listing 12.05. *See Bland v. Astrue*, No. 10-3223, 432 Fed. Appx. 719, 722-23, 2011 WL 1571463 (10th Cir. April 27, 2011) (unpublished) (finding that the ALJ was not required to address Listing 12.05 when the claimant's attorney presented evidence that his client had borderline intellectual functioning rather than mental retardation, and the evidence in the record did not indicate mental retardation). While counsel for Plaintiff states that he requested a 12.05 Listing analysis by the ALJ [*Doc. 21* at 7] (citing *Doc. 16-3* at 7), this letter from Plaintiff's counsel to the Appeals Council, however, states that Plaintiff was diagnosed with "Borderline Intellectual Functioning," and nowhere asks the ALJ to conduct a 12.05 Listing analysis. [*Doc. 16-3* at 7]. Instead, Plaintiff asked for an extension of time in which to submit new and material evidence, namely the results of a Wechsler Adult Intelligence Scale (WAIS) IQ test. While the record shows that Plaintiff only completed 11th grade and was in special education classes (*see Doc. 16-3* at 43-44), there is no evidence indicating that Plaintiff had significantly subaverage intellectual functioning, and none of Plaintiff's doctors found that Plaintiff had the severe mental impairments equal to Listing 12.05. *See, e.g.,* [*Doc. 17-4* at 14] (Psychiatric Review Technique by Dr. Logan, where box for "Mental Retardation" is not marked as a category upon which his medical disposition is based). The Court, therefore, finds that the ALJ did not err in failing to conduct a Listing 12.05 analysis at step three.

The Court also finds that Plaintiff's contention that the ALJ should have ordered a consultative psychological evaluation is without merit. The ALJ "has broad latitude in ordering consultative examinations." *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (citation omitted). There are three instances when such an examination is required: (1) "where there is a

direct conflict in the medical evidence requiring resolution;" (2) "where the medical evidence in the record is inconclusive;" and (3) "where additional tests are required to explain a diagnosis already contained in the record."  *Id.; accord, Barrett v. Astrue*, No. 08-2300, 349 Fed. Appx. 481, 486, 2009 WL 2400267 (10th Cir. Aug. 6, 2009) (unpublished) (quoting *Hawkins*, 113 F.3d at 1166).  The Tenth Circuit has explained that when determining whether an ALJ should have ordered a consultative examination, "the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation."  *Hawkins*, 113 F.3d at 1167 (citation omitted).  The Court finds that none of these scenarios are in play here -- there is no conflict in the medical evidence, the medical evidence is not inconclusive, and there are no additional tests required to explain a diagnosis already in the record, because Plaintiff was never diagnosed with mental retardation.  The Court, therefore, finds that this contention should fail.

## VI.  Recommended Disposition

Because the Court finds that this case should be remanded for additional proceedings based on the ALJ's assessment of Drs. Wynne and Logan's findings, the ALJ will be required to re-assess Plaintiff's RFC in light of the consideration given to those findings.  It is, therefore, unnecessary for the Court to reach Plaintiff's alleged errors regarding the ALJ's hypothetical questioning to the VE and step five findings, because those issues could be affected by the ALJ's resolution of this case on remand.

**IT IS THEREFORE HEREBY RECOMMENDED,** for the reasons stated above, that Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision (Doc. 20)* be **GRANTED in part** and **DENIED in part**, and the decision of the Commissioner of Social Security (hereinafter "Commissioner") be **REMANDED**.

_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**